## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| JOHNNIE WILL HARRIS, JR., | } | |
| | } | |
| Plaintiff, | } | |
| | } | |
| v. | } | Case No.: 2:16-cv-01646-RDP |
| | } | |
| JOHNSON'S GIANT FOODS, INC., et al., | } | |
| | } | |
| Defendants. | } | |

## MEMORANDUM OPINION

This case is before the court on Defendant Johnson's Giant Foods, Inc.'s ("Giant Foods") Motion to Dismiss and Memorandum of Law (Doc. # 71) and Defendant Clark Thompson's Second Motion to Dismiss (Doc. # 79).  The motions have been fully briefed and are under submission.  (Docs. # 71, 80-81, 86-88).  After careful review, and for the reasons explained below, the court concludes that Defendants' motions to dismiss are due to be granted, and all claims are due to be dismissed without prejudice.

## I.      Relevant Allegations in the Second Amended Complaint

Plaintiff alleges that Phyllis Minshew, a Giant Foods employee, filed a criminal complaint against him with the District Court of Etowah County, Alabama, on November 18, 2014.  (Doc. # 66 at ¶¶ 3-4).  Minshew's complaint charged Plaintiff with possessing or uttering a forged instrument with intent to defraud.  (*Id.* at ¶ 5).  According to the criminal complaint and an incident report allegedly prepared by Defendant Thompson, Plaintiff cashed a forged payroll check -- purported to be issued by Frito Lay, Inc. -- on October 27, 2014.  (*Id.* at ¶¶ 5-6).  Plaintiff denies that he ever entered Defendant Giant Foods's Gadsden grocery store and denies

making or presenting a check to it from Frito Lay. (*Id.* at ¶ 8). Indeed, Plaintiff claims that he was a victim of identity theft. (*Id.* at ¶ 22). Moreover, he alleges that Giant Foods obtained fingerprints from the individual who cashed the check and took surveillance video of the incident. (*Id.* at ¶ 10).

In the Second Amended Complaint, Plaintiff alleges, in the alternative, that either (1) Defendant Thompson knew about the fingerprints and video evidence pertaining to the fraudulent transaction, or (2) Giant Foods concealed or refused to provide such evidence to Thompson during his investigation. (*Id.* at ¶¶ 11-12). Based on the former allegation, Plaintiff claims that Thompson failed to consider the fingerprint or video evidence when investigating the forged check. (*Id.* at ¶ 17). Likewise, he alleges that Defendant Giant Foods possessed "video and fingerprint evidence which showed that the plaintiff was not the person who cashed the check." (*Id.* at ¶ 15). Nevertheless, he claims that Defendant Thompson "prepared a warrant" for his arrest. (*Id.* at ¶ 7). He alleges that the forgery charges were instituted against him "to illegally and improperly collect money." (*Id.* at ¶ 18). To that end, on December 4, 2014, Defendant Giant Foods filed a restitution affidavit seeking $1,244.46. (*Id.* at ¶ 19).

On December 18, 2014, Plaintiff was arrested in Hoover, Alabama, and held in Hoover's jail. (*Id.* at ¶ 1). Gadsden police transported him from Hoover to Gadsden and held him until he posted an appearance bond. (*Id.*). Ultimately, a grand jury issued a no bill and the criminal complaint against Plaintiff was dismissed. (*Id.* at ¶ 2).

Along with his motion to dismiss, Defendant Thompson sought leave to submit state-court records to this court for review in conjunction with the motions to dismiss. (Doc. # 76). Plaintiff did not object to this motion. (*Id.* at 1). According to these records, on November 18, 2014, Minshew submitted a criminal complaint to the Etowah County court that charged Plaintiff

with possessing or uttering a forged instrument with intent to defraud, in violation of Alabama Code § 13A-9-6. (Doc. # 76-1 at 2). The criminal complaint states that Defendant Thompson and Minshew are witnesses for the state. (*Id.*). On November 18, 2014, a district court magistrate signed an arrest warrant against Plaintiff premised on Minshew's criminal complaint. (Doc. # 76-2 at 2). Officers executed the arrest warrant on December 18, 2014, and Plaintiff was placed in Etowah County Jail. (*Id.*). A district court judge bound the criminal case against Plaintiff to a grand jury in May 2015. (Doc. # 76-3 at 2).

## II.     Standard of Review

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate

"more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that all of the well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 570.

In most cases, a court may not consider anything beyond the face of a complaint and documents that are attached to a complaint when reviewing whether a plaintiff has stated a claim for relief. *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007). There are limited exceptions to this rule. Among other exceptions, a court may "take judicial notice of publicly filed documents, such as those in state court litigation, at the Rule 12(b)(6) stage." *U.S. ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 811 n. 4 (11th Cir. 2015). The state-court records filed by Defendant Thompson fall within the category of documents the court may consider under Rule 12(b)(6). *See id.* And, in any event, Plaintiff has not objected to Thompson's request for the court to consider the documents. (*See* Docs. # 76 at 1; 87).

Accordingly, the court will review and consider the criminal complaint, arrest warrant, and order filed by Thompson in ruling on these motions to dismiss. (*See* Docs. # 76-1, 76-2, & 76-3).

## III.  Analysis

The court begins its analysis by determining whether Plaintiff's § 1983 claim is due to be dismissed as to both Defendants. Then, it discusses whether Plaintiff has plausibly pled a conspiracy under 42 U.S.C. §§ 1981, 1985, or § 1986. Finally, it addresses whether Plaintiff's state-law claims are due to go forward in this forum.

### 1.  Plaintiff Has Failed to Allege that Defendant Giant Foods Acted Under Color of State Law

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted). A deprivation of a plaintiff's rights is fairly attributable to the state when (1) it is "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and (2) where the party charged with the deprivation is "a person who may fairly be said to be a state actor." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (internal citations and quotations omitted).

In certain circumstances, a private party may be considered a state actor for purposes of § 1983. *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992); *see also Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 938-39 (1982). The Eleventh Circuit has directed district courts to determine whether one of three conditions is met for private parties, such as Defendant Giant Foods, to be deemed state actors:

(1) the State has coerced or at least significantly encouraged the action alleged to violate the Constitution ("State compulsion test"); (2) the private parties performed a public function that was traditionally the exclusive prerogative of the State ("public function test"); or (3) "the State had so far insinuated itself into a position of interdependence with the [private parties] that it was a joint participant in the enterprise[ ]" ("nexus/joint action test").

*Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001) (quoting *NBC, Inc. v. Commc'ns Workers of Am.*, 860 F.2d 1022, 1026-27 (11th Cir. 1988)).

Here, Plaintiff presents two paragraphs of allegations to support his position that Giant Foods acted under color of state law:

33.     Johnson's Giant Foods, Inc. engaged in conduct chargeable to the state by invoking court procedures, including the bad check laws, arrest and criminal proceedings which constituted state action.

34.     Johnson's Giant Foods, Inc. acted together with and obtained significant aid from state officials, particularly Clark Thompson.

(Doc. # 66 at ¶¶ 33-34).  From these allegations, Plaintiff argues that Giant Foods "acted together with or obtained significant aid from state officials," an argument that appears to rely on the joint action test described in *Rayburn*.  (Doc. # 81 at 3).  After careful review, the court concludes that Giant Foods's conduct cannot be construed as state action.

First, the court finds that the mere filing of a police report or a criminal complaint cannot be considered state action under these circumstances.  "Absent allegations showing a conspiracy between a private party and a state official to violate a person's rights, actions such as filing a police report or a criminal complaint do not transform a private party into a state actor."  *Smith v. Striblings*, 2014 WL 2619099, at *4 (N.D. Ga. June 12, 2014).  *See also Johansson v. Emmons*, 2010 WL 457335, at *8 (M.D. Fla. Feb. 4, 2010) (noting a lack of authority for classifying the filing of a criminal complaint as state action); *Artubel v. Colonial Bank Grp., Inc.*, 2008 WL 3411785, at *14 (M.D. Fla. Aug. 8, 2008) (dismissing a conspiracy claim against private

6

defendants for bringing a "bogus criminal complaint" where the allegations presented a mere conclusory allegation of a conspiracy between the private defendants and public officers); *Moody v. Farrell*, 868 F.3d 348, 353 (5th Cir. 2017) ("[E]vidence that a private citizen reported criminal activity or signed a criminal complaint does not suffice to show state action on the part of the complainant in a false arrest case."). Thus, Minshew's filing of a criminal complaint and Giant Foods's filing of a restitution affidavit, standing by themselves, cannot be classified as state action supporting a § 1983 claim.

Second, the court determines that the Second Amended Complaint lacks any detail to support the conclusory allegation that Giant Foods acted in concert with any public employee or entity. (*See* Doc. # 66 at 34). As in *Harvey*, Plaintiff's complaint merely discusses the conduct of the individual Defendants without explaining how they reached an understanding to violate Plaintiff's rights. *See Harvey*, 949 F.2d at 1133 (holding that a plaintiff failed to establish the defendants' state action through a conclusory allegation of a conspiracy). Plaintiff's unsupported allegation that Giant Foods and state officials acted together falls far short of showing that Defendant Giant Foods jointly participated in state action. Therefore, Plaintiff's § 1983 claims against Giant Foods in Count One are due to be dismissed.

### 2. Plaintiff Has Failed to Allege that Defendant Thompson Maliciously Initiated the Criminal Prosecution Against Him

Plaintiff's Second Amended Complaint also raises § 1983 false arrest and false prosecution claims against Thompson for allegedly acting in concert with Giant Foods. (Doc. # 66 at ¶¶ 28, 31-32). Defendant Thompson does not contest that he acted under color of state law in investigating Giant Foods's complaint. Instead, he asserts the claim is due to be dismissed based upon qualified immunity.

Qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). While qualified immunity is typically addressed at summary judgment, it may be "raised and considered on a motion to dismiss." *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). Indeed, the "driving force" behind the creation of the qualified immunity doctrine was a desire to ensure that "'insubstantial claims' against government officials [will] be resolved prior to discovery." *Anderson v. Creighton*, 483 U.S. 635, 640 n. 2 (1987). Accordingly, the Supreme Court "repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (*per curiam*).

Qualified immunity utilizes an "objective reasonableness standard, giving a government agent the benefit of the doubt unless her actions were so obviously illegal in the light of then-existing law that only an official who was incompetent or who knowingly was violating the law would have committed them." *GJR Invs., Inc. v. Cty. of Escambia, Fla.*, 132 F.3d 1359, 1366 (11th Cir. 1998), *overruled on other grounds by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010). The Eleventh Circuit has cautioned that "courts should think long and hard before stripping defendants of immunity." *Ray v. Foltz*, 370 F.3d 1079, 1082 (11th Cir. 2004). "We generally accord . . . official conduct a presumption of legitimacy." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 179 (1991).

Whether a defendant is entitled to qualified immunity is determined by engaging in a three-step analysis. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1136-37 (11th Cir. 2007). The initial burden is on an official claiming qualified immunity to establish that he or she was

acting within his or her discretionary authority. *Id.* Here, Plaintiff has not disputed that Thompson acted within his discretionary authority when investigating the criminal complaint against Plaintiff. (*See* Docs. # 80 at 23, 87 at 17-19). Because that showing has been made, the burden shifts to Plaintiff to show that the "defendant's conduct violated a statutory or constitutional right." *Skop*, 485 F.3d at 1137. Finally, "the plaintiff must show that the violation was 'clearly established.'" *Id.*; *Snider v. Jefferson State Cmty. Coll.*, 344 F.3d 1325, 1328 (11th Cir. 2003) ("When case law is needed to 'clearly establish' the law applicable to the pertinent circumstances, we look to decisions of the U.S. Supreme Court, the United States Court of Appeals for the Eleventh Circuit, and the highest court of the pertinent state." (citing *Marsh v. Butler Cty., Ala.*, 268 F.3d 1014, 1032-33 n. 10 (11th Cir. 2001) (en banc))). "There are three ways in which [a plaintiff] may show that the right violated was clearly established: '(1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.'" *Perez v. Suszcynski*, 809 F.3d 1213, 1222 (11th Cir. 2016) (quoting *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291-92 (11th Cir. 2009)). If a defendant can establish that he is entitled to qualified immunity, then the federal, individual capacity claims will be dismissed. *See Randall*, 610 F.3d at 714.

Because Plaintiff's arrest occurred pursuant to an arrest warrant, Plaintiff's only available § 1983 claim against Thompson is a malicious prosecution claim. *Carter v. Gore*, 557 F. App'x 904, 906 (11th Cir. 2014). "The issuance of a warrant—even an invalid one as [Plaintiff] alleges was issued here—constitutes legal process, and thus, where an individual has been arrested pursuant to a warrant, his claim is for malicious prosecution rather than false arrest." *Id.*

"To establish a federal malicious prosecution claim under § 1983, a plaintiff must prove (1) the elements of the common law tort of malicious prosecution, and (2) a violation of her Fourth Amendment right to be free from unreasonable seizures." *Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004). The elements for a malicious prosecution claim include: (1) "a criminal prosecution instituted or continued by the present defendant"; (2) "with malice and without probable cause"; (3) "that terminated in the plaintiff accused's favor"; and (4) "caused damage to the plaintiff accused." *Wood v. Kesler*, 323 F.3d 872, 882 (11th Cir. 2003). "In *Malley v. Briggs*, the Supreme Court established that even if a magistrate approves an arrest warrant, the officer who applied for the warrant may be liable for violating the Constitution if the evidence presented to the magistrate was insufficient to establish probable cause." *Carter*, 557 F. App'x at 908 (citing *Malley v. Briggs*, 475 U.S. 335, 345 (1986)). For example, an officer may be held liable for violating the Fourth Amendment if he or she proffers an affidavit for a warrant that lacks a basis for a belief that the suspect violated the law or an affirmative statement that the officer has personal knowledge of the circumstances of the alleged crime. *Id.* at 908-09 (discussing *Kelly v. Curtis*, 21 F.3d 1544, 1555 (11th Cir. 1994), and *Garmon v. Lumpkin Cty.*, 878 F.2d 1406, 1408-09 (11th Cir. 1989)).

As stated above, a plaintiff must allege that a defendant instituted a criminal proceeding with malice in order to state a § 1983 malicious prosecution claim. *Wood*, 323 F.3d at 882. Under Alabama law, "[a]ny other motive than a bona fide purpose to bring the accused to punishment as a violator of the criminal law or another purpose associated with such bona fide purpose is malicious." *Nat'l Sec. Fire & Cas. Co. v. Bowen*, 447 So. 2d 133, 140 (Ala. 1983). *See also Ennis v. Beason*, 537 So. 2d 17, 20 (Ala. 1988) (affirming a directed defense judgment on a malicious prosecution claim where the undisputed evidence showed that a school principal

instituted legal proceedings against a parent in order to ensure that a suspension against her child was enforced). "Malice may be inferred from the want of probable cause, or from [a] defendant's conduct, where such conduct will admit of no other reasonable construction." *Willis v. Parker*, 814 So. 2d 857, 864 (Ala. 2001) (quoting *Dillon v. Nix*, 318 So. 2d 308, 310 (Ala. Civ. App. 1975)).

Here, Plaintiff noticeably has failed to allege that Thompson instituted the criminal proceedings with malice against him. (Doc. # 66 at ¶¶ 27-34). While a plaintiff only needs to allege a defendant's malice generally, *see* Fed. R. Civ. P. 9(b), the court declines to infer an allegation that Thompson acted with malice against Plaintiff when no such statement (or even one remotely like it) appears in the complaint. *See Indy Lube Invs., L.L.C. v. Wal-Mart Stores, Inc.*, 199 F. Supp. 2d 1114, 1120 (D. Kan. 2002) (noting a party's failure to plead fraudulent intent in the complaint and refusing to infer fraudulent intent from the facts pled). Moreover, the Second Amended Complaint cannot be construed to support an inference that Thompson acted with malice, rather than a good faith purpose to punish the actual forger. While the Second Amended Complaint summarily alleges that Thompson knew Plaintiff was not the person who cashed the check (Doc. # 66 at ¶ 28), the complaint contradicts this summary allegation that Thompson knew of Plaintiff's innocence by averring that Thompson "failed to use" the video and fingerprint evidence that exonerated Plaintiff. (*Id.* at ¶¶ 15, 17). To be sure, the Second Amended Complaint identifies Giant Foods's ulterior motive in pursuing the prosecution: to obtain compensation for the forged check from Plaintiff through the criminal restitution process. (*See id.* at ¶¶ 18-19). Nothing suggests, though, that Thompson shared Giant Foods's ulterior financial interest.

Plaintiff analogizes this case to *Carter*, where the Eleventh Circuit held that the plaintiff stated a viable malicious prosecution claim predicated on securing an arrest warrant without probable cause. 557 F. App'x at 906-07. But, the court finds this case distinct from *Carter* in at least one vital respect. Unlike the plaintiff in *Carter*, Plaintiff has not alleged that Thompson filed an affidavit in support of the arrest warrant, nor has he claimed that the magistrate relied on Thompson's testimony or beliefs to issue an arrest warrant. (*See* Doc. # 66 at ¶ 7) (stating that Thompson "prepared a warrant"). *See also Carter*, 557 F. App'x at 908-09, 910-11 (concluding that the plaintiff asserted a violation of clearly established law where the officer submitted an affidavit in support of an arrest warrant without explaining the evidence supporting his belief that the plaintiff had committed a crime or confirming that his affidavit was based on personal knowledge). The Second Amended Complaint and the submitted state-court records reveal that Thompson "prepared a warrant" and was listed as a witness for the state, but they do not allege that Thompson applied for the arrest warrant. (Docs. # 66 at ¶ 7; 76-1 at 2). Because the Second Amended Complaint fails to allege facts from which the court can plausibly infer Defendant Thompson's malice in initiating any prosecution, Plaintiff's § 1983 claim against Thompson must be dismissed.[1]

### 3.    The Second Amended Complaint Fails to Plead an Actionable Conspiracy under §§ 1981, 1985(3), or 1986

The court agrees with Defendants that Plaintiff pleads no facts to support a claim or inference that Defendants engaged in intentional race discrimination, as is necessary to support a § 1981 claim. "To state a claim of race discrimination under § 1981, plaintiffs must allege facts

---

[1] To be clear, Plaintiff has not alleged a § 1983 claim premised on Defendant Thompson's failure to conduct a reasonable investigation into the evidence presented to him. *Cf. Kingsland*, 382 F.3d at 1228-31 (describing a false arrest claim premised on the officers' failure to investigate evidence that another officer caused the accident at issue and that the plaintiff's condition was caused by the accident, rather than her purported intoxication). The court offers no ruling on whether Plaintiff could state a plausible § 1983 claim under that unasserted theory.

establishing: (1) that the plaintiff is a member of a racial minority; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1270 (11th Cir. 2004). Although Plaintiff alleges that Defendants' conduct deprived him of the equal benefit of the law (Doc. # 66 at ¶ 37), he has provided no allegation whatsoever that indicates Defendants intended to discriminate against him because of his race or that they considered his race at all. Therefore, Plaintiff's § 1981 claim against Defendants in Count Two is due to be dismissed.

Likewise, because Plaintiff has not pled facts to support a claim or inference that Defendants engaged in intentional race discrimination, his § 1985(3) claim must be dismissed. The elements of a § 1985(3) claim are: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to a person, an injury to his or her property, or a deprivation of his or her rights and privileges as a citizen of the United States. *Trawinski v. United Techs.*, 313 F.3d 1295, 1299 (11th Cir. 2002). "The purpose of § 1985 was to stifle the serious class-based deprivation of constitutional rights by private parties, not to serve as a general federal tort law, and, as such, a claim under § 1985(3) requires the proof of invidious discriminatory intent as well as the violation of a serious constitutional right protected not just from official, but also from private encroachment." *Id.* Here, the Second Amended Complaint wholly fails to allege that Defendants intended to deprive him of equal privileges of law based on his race or his membership in any other cognizable group. (*See* Doc. # 66 at ¶ 39) (alleging, in a conclusory

fashion, that Defendants conspired to deprive Plaintiff of equal privileges under the law).

Therefore, Plaintiff's § 1985(3) claim against Defendants in Count Three is due to be dismissed.[2]

The inadequacies of Plaintiff's § 1985(3) claim lead the court to conclude that his § 1986

claim also must be dismissed. Because Plaintiff must show that a § 1985(3) conspiracy existed

in order to pursue a § 1986 claim, his § 1986 claim in Count Four premised on Defendants'

knowledge of the alleged § 1985(3) conspiracy described in Count Three fails as well because

Plaintiff has not plausibly pled that a § 1985(3) conspiracy existed. *Park v. City of Atlanta*, 120

F.3d 1157, 1159 (11th Cir. 1997) (explaining that "[t]he text of § 1986 requires the existence of a

§ 1985 conspiracy" and "that § 1986 only provides a cause of action in the existence of a §

1985(3) conspiracy").

### 4.     The Court Declines to Exercise Supplemental Jurisdiction Over the Remaining State-Law Claims

Counts Five through Eight of the Second Amended Complaint present state-law false

imprisonment, malicious prosecution, abuse of process, and negligence claims against

Defendants. (Doc. # 66 at ¶¶ 42-61). Plaintiff appears to rely on supplemental jurisdiction to

support the court's subject-matter jurisdiction over these state-law claims. (*See* Doc. # 66 at 1)

(premising the court's subject-matter jurisdiction on federal question jurisdiction, civil rights

jurisdiction, and supplemental jurisdiction). Because the § 1981, § 1983, § 1985(3), and § 1986

claims are due to be dismissed for failure to state a claim, no federal-law claim remains in this

action. Moreover, diversity jurisdiction appears to be inapplicable because, at a minimum,

---

[2] Alternatively, Plaintiff's § 1985(3) claim is due to be dismissed because he has not specified which right or privilege Defendants conspired to violate. *See Trawinski*, 313 F.3d at 1299. (*See also* Doc. # 66 at ¶ 39). To the extent Plaintiff's conclusory allegations can be construed to allege that Defendants conspired to violate his Fourth Amendment rights, the Supreme Court has not recognized an individual's Fourth Amendment rights to be protected from purely private conspiracies. *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 278 (1993) (explaining that the only recognized rights protected from private conspiracies are the right to be free from involuntary servitude and the right of interstate travel and stating, in an example, that "[a] burglar does not violate the Fourth Amendment").

Plaintiff and Defendant Thompson appear to both be Alabama citizens. (*See id.* at ¶¶ 1, 6) (alleging that the plaintiff resided in Hoover, Alabama in December 2014 and that Thompson is an officer with the Gadsden, Alabama Police Department).

Under 28 U.S.C. § 1367(c)(3), this court has discretion to retain jurisdiction over or dismiss state-law claims once all federal claims are decided. However, the Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when . . . the federal claims have been dismissed prior to trial." *Raney v. Allstate Ins. Co*., 370 F.3d 1086, 1088-89 (11th Cir. 2004). This court finds no reason to retain jurisdiction over the state-law claims, and, thus, dismisses them without prejudice. Pursuant to 28 U.S.C. § 1367(d), Plaintiff has thirty days from this date to re-file his state-law claims in Alabama state court. *See Weinrib v. Duncan*, 962 So. 2d 167, 169 (Ala. 2007).

## IV. Conclusion

For the reasons explained above, Defendants' Motions to Dismiss (Docs. # 71, 79) are due to be granted. An Order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this December 12, 2017.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE